O'KEIFFE *et al. v.* CUNNINGHAM *et al.*

One party may locate ground in the mineral districts for fluming purposes, and another
party, at the same or a different time, may locate the same ground for mining pur-
poses; the two locations being for different purposes, will not conflict.
A party may take up a claim for mining purposes that has been and still is used as a
place of deposit for tailings by another; but in that case, his mining right will be
subject to the prior right of deposit.

APPEAL from the District Court of the Fourteenth Judicial
District, County of Nevada.

This was an action of trespass, brought by the plaintiff against
the defendants, for discharging their tailings on the mining-
claims of plaintiffs. The complaint alleges that plaintiffs were
lawfully possessed of seventeen mining-claims; that such pos-
session dates from the third day of April, 1856; that while so
possessed, defendants discharged through a flume, large quanti-
ties of water and tailings upon the ground of plaintiffs, and
thereby covered up and incumbered their mining-claims, etc.

The defendants deny the allegations in plaintiffs' complaint,
and set up prior location, and right to discharge such tailings
upon the ground occupied by plaintiffs. The facts, sufficient to
elucidate the points decided by the Court, appear in the opinion
of the Court. Trial was had before a jury, the defendants had
verdict and judgment. Plaintiffs moved for a new trial, which
was denied, and they appealed.

*Dunn & Rowe* for Appellants.

*McConnell & Dibble* for Respondents.

BURNETT, J., delivered the opinion of the Court—TERRY, C.
J., concurring.

An opinion was delivered in this case at the April Term, 1857,
and a re-argument had at the succeeding July Term. The
judgment was considered erroneous in consequence of the admis-
sion of certain testimony. The defendants' counsel, in answer
to the objection to the admission of this testimony, insisted that
no exception had been made by the plaintiffs in the Court below.
This was his only answer to the objection. The counsel had
overlooked the fact that an exception had been taken. But
upon the re-hearing we became satisfied that the testimony in
reference to the other flume was admissible for the purpose of
showing that the gravel and other refuse matter, (called, in the
technical language of the mines, tailings,) deposited upon the

38

alleged claims of plaintiffs, were placed there, at least in part, by other parties, with whom defendants had no connection.

This leads us to consider the other points made by the plaintiffs.

The Court refused to give the third and eighth instructions offered by plaintiffs. The third instruction was properly refused; and the refusal of the eighth, relating to the measure of damages, did the plaintiff no injury, as the jury found a general verdict for the defendants.

The only remaining point is, that the Court erred in refusing to grant a new trial, upon the ground that the verdict was against law and evidence.

The testimony, as spread upon the record, is voluminous, and yet concisely stated. The facts of the case were complicated; and, at first view, there would seem to be a conflict of testimony. We have given the record the most patient consideration, and we can not see any material conflict in the testimony of the different witnesses, as to the main facts.

The plaintiffs introduced evidence to show that they owned two sets of claims—the upper and lower; the first located in 1851, and the second in July, 1855. In August, 1855, Clark commenced the construction of a flume, called Clark's Flume, near the lower end of the second set of claims. He was forbidden by the plaintiffs, and thereupon plaintiffs and Clark subsequently entered into a written article, by which it was agreed that Clark should have the privilege of entering upon the mining-claims of plaintiffs, and erect upon and over the same a water-flume, so as to carry the water and tailings flowing from Clark's claims, located above, across the claims of plaintiffs, but not to interfere with the working of the same, in any manner, and not to deposit thereon any tailings. Clark afterwards sold his flume to defendants, who entered under the purchase.

The defendants coming in under purchase from Clark, obtained only the right that Clark possessed, and were bound by the compromise made by him with plaintiffs. The defendants entered in subordination to the title of plaintiffs, and were bound accordingly. (Ellis v. Jeans et al., 7 Cal. Rep., 409.) The Court very properly instructed the jury in regard to this point.

The next inquiry was as to what constituted the "mining-claims belonging" to plaintiffs at the date of the article, thirtieth August, 1855, within the meaning of the instrument.

It seems perfectly established that Frany & Walker located the lower set of claims on the fifth of July, 1855; but they only located for what is called fluming purposes. The Court very properly instructed the jury that one party may locate the same ground for fluming purposes, and another party, at the same or a different time, may locate for mining purposes, and the two locations, being for different purposes, will not conflict.

The plaintiffs proved by Forbes that they located the lower set of claims in July, 1855, and before Clark commenced the construction of his flume; and that the claims were staked off and recorded. The statements of this witness are clear and explicit affirmative evidence, uncontradicted by other witnesses, and consistent in itself. And not only so, but it is confirmed by facts stated by Clark, a witness for both parties; as Clark says that when he commenced his flume, plaintiffs claimed to own both the upper and lower sets of claims.

Then, as to the fact that defendants, after the purchase from Clark, exceeded the limited rights they purchased, by flowing water, and depositing tailings upon the lower claims of plaintiffs, to their injury, it seems too clear to admit of any reasonable doubt.

As to the question, whether the plaintiffs included within their limits more ground than they were entitled to under the rules and regulations of that locality, the defendants, coming in under Clark, were not in a situation to raise it.

The jury seems to have been misled by the fact that the Union Company had been in the habit of depositing the tailings from their flume upon the lower claim of plaintiffs since 1854. From this they seem to have inferred the right of defendants to do the same thing. But such a conclusion does not follow. A party may take up a claim for mining purposes that has been and still is used as a place of deposit for tailings by another, and his mining right may be subject to this prior right of deposit; but the claim of the miner will not be subject to those who come after him.

We always feel great reluctance to disturb the verdict of a jury. But in this case, we are compelled to say, the plaintiffs are entitled to a new trial.

Judgment reversed, and cause remanded.